UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CALIX, INC.,
        Plaintiff,

v.

ALFA CONSULT, S.A.,
        Defendant.

Case No. 15-cv-00981-JCS

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 17

## I.   INTRODUCTION

This is a breach of contract case by Calix, Inc. ("Calix" or "Plaintiff") against Alfa Consult, S.A. ("Alfa" or "Defendant") for two unpaid invoices. Calix has filed and served the Complaint on Alfa, sought and received an entry of default, and now moves for default judgment. Alfa has not appeared in this action. The Motion came on for hearing on June 12, 2015. In response to the Court's requests, Plaintiff's counsel filed a supplemental declaration on June 12, 2015 and a second supplemental declaration on June 22, 2015. Since there is no consent to magistrate judge jurisdiction from Defendant, the case will be reassigned to a district court judge. For the reasons stated below, the undersigned recommends that Plaintiff's Motion be GRANTED.

## II.   BACKGROUND

### A.   Factual Background[1]

Plaintiff Calix is a corporation organized and existing under the laws of Delaware and doing business in California. Compl. at 1. Defendant Alfa is a corporation organized and existing under the laws of Luxembourg. *Id*. On December 3, 2012, Calix and Alfa entered into a

---

[1] The factual background is based on the allegations in Calix's Complaint, which is taken as true for the purposes of this Motion. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

commercial agreement ("Agreement") for Alfa, the reseller, to sell Calix's products and services in Iraq. *See id*. Ex. A (Non-Exclusive Reseller Agreement). Alfa purchased a number of products from Calix in connection with a project for the Maysan Governorate in Iraq, and Calix issued Alfa invoices for these purchases. *Id*. at 2. On January 27, 2014, Calix issued Alfa an invoice in the amount of $120,000.00 with a due date of February 26, 2014 (invoice no. 1052636). *Id*. On February 6, 2014, Calix issued Alfa another invoice in the amount of $805.50 with a due date of March 8, 2014 (invoice no. 1053509). *Id*. These two unpaid, past-due invoices are the subject of this lawsuit. *Id*. Between February 2014 and January 2015, Calix demanded "on multiple occasions" that Alfa pay the invoices, and Alfa "repeatedly told Calix that payment would be forthcoming," but Calix never received payment. *Id*. Calix claims entitlement to (1) damages in the amount of $120,805.50; (2) prejudgment interest on amounts due under the Agreement at the rate of 1.5%; (3) post-judgment interest; and (4) attorney's fees and costs. Compl. at 3.

### B.   Procedural Background

On March 3, 2015, Calix filed the instant Complaint. Dkt. 1. On March 11, 2015, the court clerk Gina Agustine-Rivas served the Summons and Complaint on Alfa using FedEx International, requiring a signed receipt. *See* Declaration of Terry Sterling in Support of the Application for Entry of Default Judgment ("Sterling Decl.") Ex. A (Certificate of Service). The package was received and signed for by Lena on March 13, 2015. *See* Sterling Decl. Ex. B (FedEx Proof of Delivery).

Alfa did not file an answer to the Complaint or otherwise appear in this action. On April 10, 2015, the clerk entered default against Alfa. Dkt. 12. Calix filed the present Motion on May 4, 2015, and the Motion remains unopposed.

### C.   Requested Relief

Calix requests default judgment against Alfa and the following relief: (1) payment for the two unpaid purchases in the amount of $120,805.50; (2) prejudgment interest in the amount of $28,981.24; (3) post-judgment interest; and (4) attorney's fees and costs in the amount of $15,233.65. Mot. at 5; Supplemental Declaration of Terry Sterling in Support of Request for (1) Attorneys' Fees and Costs and (2) Prejudgment Interest in Connection with Entry of Default

Judgment ("Sterling Supp. Decl.") ¶ 8.

## III. LEGAL STANDARD

After an entry of default by the court clerk, a district court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Provided that jurisdiction is proper and service of process on the defendant was adequate, the court considers several factors to determine whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *See Geddes*, 559 F.2d at 560. If the court finds that default judgment is appropriate, it must then determine the proper amount and character of the relief. *See id*; *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

## IV. ANALYSIS

### A. Jurisdiction

When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to determine whether it has jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1. Subject Matter Jurisdiction

The Complaint asserts diversity jurisdiction under 28 U.S.C. § 1332. Under § 1332, a court has subject matter jurisdiction over a case where the parties are a citizen of a State and a citizen of a foreign state and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(2). For purposes of diversity jurisdiction, a corporation is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. §1332(c)(1).

Here, the Complaint alleges that Calix is a corporation "organized and existing under the laws of the State of Delaware, and authorized to do business and doing business in the State of California." Compl. at 1. Thus, Calix is a "citizen of a State." 28 U.S.C. §§ 1332(a)(2), (c)(1).

Alfa is a "corporation organized and existing under the laws of Luxembourg," and thus a citizen "of a foreign state." Compl. at 1; 28 U.S.C. § 1332(a)(2), (c)(1). The alleged amount in controversy exceeds $75,000. Compl. at 1–3. Hence, subject matter jurisdiction is established § 1332(a)(2).

### 2. Personal Jurisdiction

The Complaint asserts that there exists personal jurisdiction over Alfa because Alfa consented to federal court jurisdiction through a forum selection clause in the Agreement. Compl. at 2, Ex. A ("The parties consent to the exclusive jurisdiction of, and venue in, the state and federal courts within San Francisco County, California").

Consent is a ground for exercising personal jurisdiction over a non-resident defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ("because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court"). A contract's forum selection clause is by itself sufficient to establish consent and confer personal jurisdiction. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406-07 (9th Cir. 1994) (holding that forum selection clause on passenger cruise ticket could by itself confer personal jurisdiction); *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir.2007) (accepting a forum selection clause evidences consent to personal jurisdiction in that forum). Forum selection clauses are presumed to be valid, even in default judgment cases. *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Craigslist, Inc. v. Kerbel*, No. C-11-3309 EMC, 2012 WL 3166798, at *6 (N.D. Cal. Aug. 2, 2012) (finding personal jurisdiction based on consent to forum selection clause even where defendant failed to appear).

Here, the Agreement signed by Calix and Alfa provides that the parties "consent to the exclusive jurisdiction of, and venue in, the state and federal courts within San Francisco County, California." Compl. Ex. A at 10–11. This forum selection clause is prima facie valid. *See Bremen*, 407 U.S. at 10. The party disputing the validity of the forum selection clause bears the burden of proving that the clause is unenforceable. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.

4

1  Supp. 2d 1039, 1052-53 (N.D. Cal. 2010).  Here, where Defendant has not appeared and the

2  undersigned sees no indication that the clause is unreasonable or otherwise unenforceable, the

3  forum selection clause may be enforced to exercise personal jurisdiction over Defendant.  *See*

4  *Craigslist, Inc.*, No. C-11-3309 EMC, 2012 WL 3166798, at *6.

     **B.**    **Adequacy of Service**

Adequate service is governed by Fed. R. Civ. P. 4.  In particular, Rule 4(f) dictates the methods of serving a foreign corporation when service is effected outside the United States.  Fed. R. Civ. P. 4(h)(2), (f).  One method is using "any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt," provided that such method is not prohibited by an applicable international agreement or by the foreign country.  Fed. R. Civ. P. 4(f)(2)(C)(ii).  Where the Hague Convention applies and the receiving country does not object to service by postal channels directly to persons abroad under Article 10(a) of the Convention, service of process may be effected under Rule 4(f)(2)(C)(ii).  *See Brockmeyer v. May*, 383 F.3d 798, 804–05 (9th Cir. 2004) (finding that where the validity of service is controlled by the Hague Convention and the receiving country does not object to the "service of process by international mail" under Article 10(a), the court "must look outside the Hague Convention for affirmative authorization of the international mail service" and that Rule 4(f)(2)(C)(ii) gives such "explicit, affirmative authorization for service by international mail").

Here, the Hague Convention applies because Luxembourg is a signatory to the Convention.[2]  In addition, at the time of service, Luxembourg was not opposed to service by postal channels.[3]  Pursuant to Rule 4(f)(2)(C)(ii), the court clerk mailed the Summons and Complaint to Alfa via FedEx international mail requiring a signed receipt.  Sterling Decl. Ex. A (Certificate of Service), Ex. B (FedEx Proof of Delivery).  FedEx international mail is an acceptable form of mail

---

[2] *See* Status Table for the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *available at* http://www.hcch.net/index_en.php?act=conventions.status&cid=17; *Gidding v. Anderson*, No. C 07-04755 JSW, 2008 WL 4065814, at *3 (N.D. Cal. Aug. 27, 2008) (Luxembourg has signed the Hague Convention); *see also* Sterling Decl. ¶ 5, Ex. C (Status Table).

[3] *See* Luxembourg's Declarations and Reservations to the Convention, available at http://www.hcch.net/index_en.php?act=status.comment&csid=690&disp=resdn (withdrawing its objection in 1978); *see also* Sterling Decl. ¶ 6, Ex. D (Declarations Reservations).

under Rule 4(f)(2)(C)(ii) as well as an acceptable postal channel under Article 10(a). *See Power Integrations, Inc. v. Sys. Gen. Corp.*, C 04-02581 JSW, 2004 WL 2806168, at *2 (N.D. Cal. Dec. 7, 2004) (holding that plaintiff made a prima facie showing of adequate service under Rule 4(f)(2)(C)(ii), where the court clerk served papers on foreign corporation via Federal Express); *R. Griggs Grp. Ltd. v. Filanto Spa*, 920 F. Supp. 1100 (D. Nev. 1996) (denying motion to quash Federal Express service on foreign corporation because service by Federal Express comported with Article 10(a) of the Hague Convention). Thus, Alfa was properly served.

### C. Entry of Default Judgment is Appropriate

Under the *Eitel* factors, default judgment is appropriate. First, Calix would suffer prejudice if a default judgment were not entered: Calix has delivered $120,805.50 of products to Alfa that remain uncompensated and has demanded payment from Alfa on multiple occasions but without success. *See Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (finding that plaintiff in a breach of contract claim would suffer prejudice "given that plaintiff has delivered sixty shipments to Parth, and has only received partial payment for its services" and "denying default judgment here would leave [plaintiff] without a proper remedy").

Next, the Complaint sufficiently alleges each element in a breach of contract claim. The elements are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage to the plaintiff as a result of defendant's breach. *See Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002). Here, Calix alleges that Alfa failed to pay Calix for two purchases made under their Agreement, and as a result, Calix incurred a loss of $120,805.50 from Alfa's failure to pay for its purchases. Compl. at 2. Accepting these allegations as true, Calix has stated a meritorious and sufficient claim for breach of contract. *See Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921 (second and third *Eitel* factors support granting default judgment where the complaint sufficiently stated a claim for breach of contract). Therefore, the second and third *Eitel* factors–merits of the claim and sufficiency of the pleadings–support granting default judgment.

Further, the sum of money at stake here–which includes the invoice amount, prejudgment interest, post-judgment interest, attorney's fees, and costs–is reasonably proportional to the harm

caused by Alfa's failure to pay. *See JBR, Inc. v. Cafe Don Paco, Inc.*, No. 12-CV-02377 NC, 2014 WL 5034640, at *14 (N.D. Cal. Aug. 25, 2014) report and recommendation adopted as modified sub nom. *JBR, Inc v. Cafe Don Paco, Inc*, No. 12-CV-02377-JD, 2014 WL 5034292 (N.D. Cal. Sept. 30, 2014) (finding that the amount at stake including the unpaid principle of the loan, interest as required by the promissory note, consequential damages for plaintiff's cover, attorney's fees and costs–though significant–is reasonably proportionate to the harm caused by defendant's breach and thus warrants default judgment).

Finally, given that Defendant, after being properly served, failed to appear, there is no indication of any dispute over material facts or any excusable neglect. *See JBR, Inc. v. Cafe Don Paco, Inc.*, No. 12-CV-02377 NC, 2014 WL 5034640, at *14 ("because the defendants have not made an effort to challenge the complaint, there is nothing to suggest that a dispute in the facts exists"); *United States v. Approximately $45,860 in U.S. Currency*, No. 14-CV-03801-JCS, 2015 WL 1387468, at *4 (N.D. Cal. Mar. 24, 2015) ("there is no likelihood of any dispute of material fact where the only likely claimant has decided not to appear"); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 922 (finding little possibility of excusable neglect where Defendant was properly service through the California Secretary of State and still failed to appear). In addition, given that Alfa "repeatedly told Calix that payment would be forthcoming" in response to Calix's demands for payment, there is no likely dispute over the shipment or prices charged; given Alfa's repeated failure to pay, the possibility of excusable neglect is remote. Compl. at 2; *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 921–22 (possibility of excusable neglect is "remote" where despite plaintiff's demands, defendant failed to pay remaining balance).

Although the general policy favoring decisions on the merits will always weigh against default judgment, a decision on the merits "is impractical, if not impossible," where, as here, the defendant fails to respond to the complaint. *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1093 (N.D. Cal. 2008). Thus, the preference to decide cases on the merits "does not preclude a court from granting default judgment." *Id*. Here, taken as a whole, the *Eitel* factors support granting default judgment.

**D.     Damages**

Plaintiff has the burden to prove its damages. *See Geddes*, 559 F.2d at 560. Here, Calix requests (1) payment for the two purchases in the invoices; (2) prejudgment interest; (3) post-judgment interest; and (4) attorney's fees and costs. Compl. at 3. A review of Calix's declarations and exhibits shows that Calix is entitled to its requested invoice payments, prejudgment interest, post-judgment interest, attorney's fees, and costs.

**1.     Unpaid Purchases**

Calix's request for the unpaid purchases in the amount of $120,805.50 is supported by copies of the invoices. *See* Declaration of Denis Quinlan in Support of Application for Entry of Default Judgment ("Quinlan Decl.") Exs. B (invoice reflecting total charges of $805.50), C (invoice reflecting total charges of $120,000.00); *Landstar Ranger, Inc.*, 725 F. Supp. 2d at 923 (Invoice summary, copies of invoices, and shipping documents supported claim for nonpayment in the amount of $243,817.34).

**2.     Prejudgment Interest**

Calix claims prejudgment interest in the amount of $28,981.24, which is consistent with the 1.5% interest rate specified in the Agreement. Quinlan Decl. Ex. A ("Late payments will accrue interest at the lesser of 1.5% per month and the highest rate allowed by applicable law"). Such interest provisions are enforceable. *See Family Tree Produce, Inc. v. Bautista*, No. SA CV 13-00364-DOC, 2013 WL 6733576, at *5 (C.D. Cal. Dec. 13, 2013) (enforcing 1.5% per month prejudgment interest rate in contract).

**3.     Post-judgment Interest**

Plaintiff is entitled to post-judgment interest on the entire judgment. 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court"); *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973).

**4.     Attorney's Fees and Costs**

Section 3.4 of the Agreement provides for "all costs, expenses and fees, including reasonable attorney's fees" incurred by Calix to enforce the Agreement. Quinlan Decl. Ex. A. Contractual agreements providing for reasonable attorney's fees are enforceable. Cal. Code Civ.

8

1 Proc. § 1021; *In re Bennett*, 298 F.3d 1059, 1070 (9th Cir. 2002).

2   Attorney's fees are reasonable where the hourly rates charged and number of hours
3 expended are reasonable and adequately supported. *See Hensley v. Eckerhart*, 461 U.S. 424, 434
4 (1983). Here, the hourly rates charged and number of hours expended are reasonable and
5 adequately supported by counsels' declarations and the submitted timesheets. *See* Sterling Decl.
6 Ex. E (Timesheets); Second Supplemental Declaration of Terry Sterling in Support of Request for
7 (1) Attorneys' Fees and Costs and (2) Prejudgment Interest in Connection with Entry of Default
8 Judgment ("Sterling Second Supp. Decl."); Declaration of Willard A. Carle, III in Support of
9 Plaintiff's Request for Attorneys' Fees. As an attorney with over 30 years of experience in
10 business litigation, Ms. Sterling's rate of $375 per hour was reasonable. Sterling Second Supp.
11 Decl. ¶ 4, Exs. B–C (*Laffey* matrix and locality adjustments); *US Foods, Inc. v. Lalla Holding
12 Corp.*, No. 5:13-CV-02328 HRL, 2014 WL 4809073, at *2 (N.D. Cal. Sept. 25, 2014) report and
13 recommendation adopted sub nom. *US Foods, Inc. v. Lalla Holding Corp*, No. 13-CV-02328-
14 BLF, 2014 WL 5281058 (N.D. Cal. Oct. 15, 2014) (in a default judgment case arising from breach
15 of contract, finding $450 per hour reasonable for an attorney with seven years of experience). As
16 a partner who practiced law for more than 20 years, Mr. Dranit's rate of $400 per hour was also
17 reasonable. *See id*. In addition, the total of 38.5 hours billed was adequately documented and
18 reasonable given the work performed (researching and drafting of the Complaint and Motion,
19 preparing and appearing for a hearing on the Motion, and drafting emails). *See* Sterling Supp.
20 Decl. Exs. A–D; Sterling Second Supp. Decl. Ex. A. The undersigned thus recommends granting
21 Calix's request for attorney's fees.

22   Costs are allowed under the Agreement as well as Fed. R. Civ. P. 54(d). *See* Quinlan Decl.
23 Ex. A at 4. Plaintiff counsel's declaration and exhibits indicate filing fees and Fed Ex service
24 costs totaling $731.15 and "Phone, Postage, In-house Photocopies" costs totaling $169.58. *See*
25 Sterling Decl. Ex. E (Bills to Client); Sterling Supp. Decl. Exs. A–D. At the hearing, Plaintiff's
26 counsel indicated that costs for "Phone, Postage, In-house Photocopies" are non-itemized
27 overhead expenses. Overhead is not recoverable. *See Abad v. Williams, Cohen & Gray, Inc*., No.
28 C-06-2550 SBA (JCS), 2007 WL 1839910, at *3 (N.D. Cal. Apr. 23, 2007) report and

recommendation adopted as modified, No. C 06-2550 SBA, 2007 WL 1839914 (N.D. Cal. June 25, 2007). Therefore, the undersigned recommends granting costs in the amount of $731.15 only.

## V.      CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiff's Motion be GRANTED and that judgment be entered in the amount of $165,020.39 for (1) the principal amount on the unpaid invoices totaling $120,805.50; (2) prejudgment interest totaling $28,981.24; (3) attorney's fees totaling $14,502.50 and (4) costs totaling $731.15. In addition, it is recommended that accrual of post-judgment interest be imposed on Defendant.

This case shall be reassigned to a United States district judge for action on this Report and Recommendation. Any party may file objections to the recommendations above no later than fourteen days after the party is served with a copy of this report. *See* 28 U.S.C. § 636(b)(1).

Dated: June 24, 2015

JOSEPH C. SPERO
Chief Magistrate Judge